Richmond

## SCHOOL BOARD OF CHESTERFIELD COUNTY
v.
## SCHOOL BOARD OF THE CITY OF RICHMOND, STATE BOARD OF EDUCATION, W.E. CAMPBELL, SUPERINTENDANT OF PUBLIC INSTRUCTION, AND CHARLES B. WALKER, COMPTROLLER OF THE COMMONWEALTH OF VIRGINIA

August 31, 1978.

Record No. 761640.

Present: All the Justices.

Frederick T. Gray; Frederick T. Gray, Jr. (Oliver D. Rudy, Common-wealth's Attorney; Williams, Mullen and Christian, on brief) for appellant,

Walter H. Ryland, Deputy Attorney General; Horace H. Edwards (Anthony F. Troy, Attorney General; William H. Hefty, Assistant Attorney General; C.B. Mattox, Jr., City Attorney; J. Neale Lawler, Assistant City Attorney; Mays, Valentine, Davenport & Moore, on brief) for appellees.

HARMAN, J., delivered the opinion of the Court.

This appeal presents a question of the proper construction of subparagraph 4 in paragraph a of *Item 573* , basic school aid fund, in the Act adopted by the General Assembly appropriating public funds of the 1974-76 biennium. Acts, 1974, c. 681. More precisely, the outcome of this appeal turns on the meaning of the term "ADM" as used in subparagraph 4.

The original suit was instituted on June 14, 1976, by the School Board of the City of Richmond (City Board) against the respondents, State Board of Education (State Board), W.E. Campbell, Superintendent of Public Instruction (State Superintendent), and Charles B. Walker, Comptroller of the Commonwealth of Virginia (State Comptroller), claiming that the State Board and State Superintendent, using erroneous "school population" data, had improperly computed the City Board's share of the basic school aid fund appropriated for the 1974-76 biennium, and had certified this erroneous computation to the State Comptroller, resulting in an underpayment from such fund to the City Board of $1,071,391. Since the biennium would end on June 30, 16 days after suit was filed, and any unexpended sums in the appropriation would revert to the general fund of the Commonwealth, the City Board asked that the respondents be ordered to correct the erroneous data, to recompute the City Board's share of basic school aid fund for the biennium and to disburse the fund accordingly. The City Board also sought to temporarily enjoin the respondents from making disbursements from the basic school aid fund to reduce it below the amount claimed by the City Board.

On the following day, June 15, the original respondents filed a third-party cross-bill alleging that if they were obligated to the City Board "for any or all of the monies claimed", the State Board was

entitled to recover $1,309,663 from the School Board of Chester-field County (County Board) for sums mistakenly paid from the basic school aid fund by the State Board to the County Board during the 1974-76 biennium.

On June 25, 1976, the County Board filed its answer to the original bill and third-party cross-bill. It also filed a cross-bill in which it alleged the original respondents, using erroneous "average daily membership" or "ADM" data as the basis of their computations, had failed to pay the County Board the sum of $1,117,497 in basic school aid funds to which it was entitled during the biennium.

Because the controversy could not be resolved before the biennium ended on June 30, the trial court, on June 29, 1976, ordered the original respondents to pay $2,458,570, the remaining amount calculated to be due to the City Board[1] and County Board[2] during the biennium by the State Board's original computations, and this sum has been held and administered under the trial court's direction since that time.

Certain background information is both necessary and helpful to an understanding of the issues. In 1970 the City of Richmond (City) annexed approximately 23 square miles of Chesterfield County (County). On the effective date of this annexation, 3352 students living in the area annexed by the City were attending the public schools in the County operated by the County Board and 515 students living in the County were attending the public schools in the area annexed to the City operated by the City Board. Under an agreement between the City Board and the County Board, those students were permitted to continue to attend the schools which they were attending prior to annexation, and each board paid tuition to the other for those students living in its jurisdiction who attended the schools operated by the other board. Since the share of each locality in the basic school aid fund for the 1968-70 biennium was directly related to the number of students in

---

[1]    $1,360.177.

[2]    $1,098,393.

"average daily attendance or ADA" in that locality, Acts, 1968, c. 806, *Item 564* , the State Board, by agreement of City Board and County Board, adjusted the ADA data of each to give credit to that locality for tuition students attending school in the other jurisdiction. The same plan for payments and adjustments continued during the 1970-71 school year.

In 1972 the Governor of Virginia appointed a "task force" to study and review the apportionment to the localities of state funds for public education. This task force recommended, and the 1974 General Assembly adopted, a complex new formula for the apportionment of state basic school aid funds to the localities to give each locality credit for local effort. The differing interpretations given to the language delineating one factor in this formula, the composite index of local ability-to-pay (composite index), gave rise to this litigation. Acts, 1974, c. 681, provides, in pertinent part:

|  | First Year | Second Year |
|---|---|---|
| "Item 573 | | |
| "Basic school aid fund   — | $377,030,125 | $403,647,635 |

"This appropriation shall be apportioned to the public schools by the Board of Education under rules and regulations promulgated by it to effect all of the following provisions stated herein.

"a.   Definitions

   "1.   'Average daily membership', or 'ADM'-the average daily membership for the first seven (7) months (or equivalent period) of the school year in which State funds are distributed from this appropriation.

* * *

   "4.   'Composite index of local ability-to-pay'-an index figure computed for each locality. The composite index is the sum of 1/3 the index of wealth per pupil in ADM and 1/6 the index of wealth per capita (Bureau of Census population estimates 1971); the State average in the composite index is 50. The indexes of wealth are determined by combining the following constituent index elements with the indicated weighting: (1) true values of real estate and public service corporations as reported by the State Department of Taxation for the calendar year 1971-50 per cent; (2) individual income level for the calendar year 1971 as determined by Tayloe Murphy Institute at

the University of Virginia-40 per cent; (3) the sales for the calendar year 1971 which are subject to the State general sales and use tax-10 per cent. Each constituent index element for a locality is its sum per ADM, or per capita, expressed as a percentage of the State average per ADM, or per capita, for the same element."

In making its apportionment of basic school aid funds to the local boards, the State Board computed the composite index using the average daily membership or ADM data reported to it by each of the local boards for the 1970-71 school year. While average daily attendance or ADA data for that year had been adjusted by agreement of the City Board and the County Board, no adjustment of average daily membership or ADM data was ever made or agreed upon.

In the trial court, the State Board and State Superintendent took the position that the ADM data to be used in computing the composite index was the 1970-71 school year data reported to it by each of the local school boards. It was the position of the State Superintendent that he had no right to adjust or change this ADM data except by agreement of the affected local boards or when such a change was ordered by a court of competent jurisdiction.

The City Board agreed that ADM data for the 1970-71 school year should be used in the composite index, but argued that it was entitled to have the ADM data for that year adjusted to give it credit for the net number of tuition students for whom it paid the County Board.

The County Board, relying on the definition of ADM contained in subparagraph 1 in paragraph a of *Item 573* , said that this provision required the use of ADM data for the first seven months of each year in the 1974-76 biennium in computing the composite index.

While recognizing that extrinsic evidence of legislative intent could not be admitted to construe a legislative act in the absence of ambiguity on its face, the trial court nevertheless admitted testimony of member of the General Assembly who was also a member of the task force, staff personnel employed by the task force, and members of the staff of the State Board. While this testimony disclosed that 1970-71 ADM data, rather than current ADM data,

were used in making up the composite index for each locality and this index, in turn, was a factor in computing the local share of basic school aid based on estimated current ADM's, none of these witnesses was able to point to anything in the act itself indicating a legislative intent to use an ADM other than the one expressly defined in subparagraph 1. While most of the witnesses testified that two separate ADM's[3] were intended to be used in the formula, the Deputy Superintendent of Public Instruction, who had primary supervision of the distribution of state funds to the local boards, testified that he used the local ADM's for three separate years in computing the local apportionment under the formula contained in the 1974-76 appropriations act. The evidence also disclosed that 1970-71 ADM data were utilized by the General Assembly in arriving at the total appropriation for the basic school aid fund for the biennium.

Based on the foregoing testimony, the trial court found the term ADM, as used in subparagraph 4, to be ambiguous and construed the term as used there to require the use of the 1970-71 ADM in computing the composite index for each locality. The trial court then adjusted Richmond's 1970-71 ADM to give it credit for the tuition students attending schools operated by the County Board, applied the composite index to the apportionment formula contained in *Item 573* , and ordered disbursement of the funds on deposit with the court, with the City Board to receive $2,387,855 and the State Board to be paid $70,685, with each of these entities also receiving a pro-rata share of the interest accruing on the fund to the date of disbursement.

We reverse. The trial court violated certain well-settled rules of statutory construction in reaching its conclusion. In construing a statute, the legislative definition should prevail. *Life & Casualty Co. v. U.C.C.* , 178 Va. 46, 57, 16 S.E.2d 357, 361 (1941). Where a statute is plain and unambiguous there is no room for construction by the court and the plain meaning and intent of the statute will be given to it. *McClung* v. *County of Henrico* , 200 Va. 870, 874, 108 S.E.2d 513, 516 (1959). When a statute is clear and unequivocal,

---

[3]    The ADM for the current year, as defined in subparagraph 1, and the ADM for the 1970-71 school year.

general rules for the construction of statutes of doubtful meaning have no application. *Seaboard Railroad* v. *Commonwealth* , 204 Va. 404, 407, 131 S.E.2d 271, 273 (1963). The province of construction lies wholly within the domain of ambiguity. *Hamilton* v. *Rathbone* , 175 U.S. 414, 421 (1899); *Almond* v. *Gilmer* , 188 Va. 1, 14, 49 S.E.2d 431, 439 (1948).

The letters ADM as used in subparagraph 4 of *Item 573* have no meaning in and of themselves. It is only by looking to the definition contained in subparagraph 1 that we learn that those letters are an abbreviation for the term. average daily membership, which would likewise have no precise meaning except for the definition thereof contained in the Act.

However, when the Act is read in light of the definition contained in subparagraph 1, i.e., the average daily membership for the first seven (7) months (or equivalent period) of the school year *in which State funds are distributed* from this appropriation, we find it clear and unambiguous. This being so, the trial court erred in admitting extrinsic evidence to interpret it. We hold, therefore, that the composite index of the City Board and the County Board for each year should have been calculated under subparagraph 4 on the basis of the ADM as defined in subparagraph 1, and the entitlement of the City Board and the County Board should have been computed by applying this composite index in the apportionment formula.

The City Board argued at bar that we should affirm the trial court's award because no exception to it was taken by the original respondents and no error to the award was assigned by them; we find this position without merit. Error was specifically assigned to the award in the County Board's assignments of error, and the ultimate question here is a determination of which of the entities is entitled to the funds deposited with the trial court.

For these reasons, the order of the court below is reversed and vacated, and the case will be remanded with direction that an order be entered consistent with this opinion for disbursement of the funds on deposit with the trial court.

*Reversed and remanded.*