## CIRCUIT COURT OF CAROLINE COUNTY

Darlene Rosada

v.

Jackson et al.

June 16, 1988

Case No. CH-87-000119

By JUDGE WILLIAM H. LEDBETTER, JR.

In this case, a recipient of Aid to Dependent Children (ADC) benefits seeks adjudication that the standards of assistance promulgated by the State Board of Social Services are invalid because they violate legislative enactments. The defendants (collectively, the Department) have demurred. This opinion addresses the issues raised on demurrer.

### I. *The ADC Program*

The ADC program is a joint federal-state effort established under the Social Security Act to provide public assistance to children of indigent families. In Virginia, the legislative framework for the program is contained in Chapter 6 of Title 63.1 of the Code. The Department administers the program. The Board establishes rules and regulations for the program.

The standards of assistance referred to in Rosado's bill, also known as standards of need, is a formulation of amounts of money which the state considers adequate to provide for basic needs. Each state must create such

standards in order to receive federal funding. As noted above, these standards have been established in Virginia, pursuant to legislative authorization, Virginia Code Section 63.1-25 and § 63.1-110, by the Board.

The terms "standards of assistance" and "standards of need" are not synonymous with "amount of assistance." The amounts actually paid to ADC recipients may be somewhat less than the pertinent standards of need figure. In short, after establishing standards to fix eligibility, the state may actually pay benefits which are only a percentage of the standard.

In any event, the standards provide the benchmark for determining amounts of assistance paid under the program.

## II. *Facts*

Darlene Rosado, a resident of Caroline County, is a recipient of ADC benefits. In April of 1987, she received a lump sum settlement for injuries sustained in an automobile accident. When she reported that fact to her local department of social services, she was informed that she would be temporarily ineligible for ADC benefits because of the ADC "lump sum rule." That rule provides that whenever a member of an ADC household receives a "nonrecurring lump sum payment," a period of ineligibility results. The length of the period of ineligibility is determined by dividing the amount of the lump sum receipt by a figure found in the formulative known as the standards of needs.

Applying the "lump sum rule" to Rosado, her lump sum receipt ($2,107) was divided by the monthly standards of need figure applicable to her household ($229), yielding a period of ineligibility of slightly more than nine months.

After she unsuccessfully protested the determination this litigation ensued.

## III. *Pleadings*

Rosado instituted this proceeding by filing a bill for declaratory relief in which she contends that the standards of need established by the Board, and implemented by the Department, are unreasonable in that they do not provide an adequate amount of assistance in violation

of § 63.1-110. She points out that if the standards of need figures were higher, her period of ineligibility would be substantially reduced. She asks the court to declare that the standards are violative of her rights under § 63.1-110; to enjoin the Department from enforcing the standards with respect to her; to enjoin the Department from denying ADC benefits to her on the ground that she is temporarily ineligible; and to award her attorney's fees and costs.

Rosado also applied for a temporary injunction. After a hearing on December 18, 1987, in light of stipulations made by counsel at the hearing, the request was denied. A few days later, an order was entered setting forth the results of that hearing.

The Department filed a demurrer containing four grounds. Counsel submitted lengthy and informative memoranda, and a hearing was held on the demurrer on May 4, 1988.

In its demurrer, the Department asserts that this proceeding is barred by the doctrine of sovereign immunity; that the court lacks jurisdiction to hear this matter; that Rosado has not exhausted her administrative remedies; and that the statutory provisions relied upon by Rosado do not provide a basis for the relief requested.

Because of the view this court takes of the jurisdictional issue, it need not decide the other matters raised in the demurrer. Nevertheless, because of the importance of the sovereign immunity claim, and related jurisdictional issues, raised by the Department, the court feels compelled to briefly address those matters.

### IV. *Sovereign Immunity*

The doctrine of sovereign immunity is "alive and well" in Virginia. The Department correctly states the general proposition that the Commonwealth cannot be sued except by permission. The Department also correctly points out that the doctrine applies to suits in equity as well as actions at law for damages.

However, the doctrine is not applicable to this case. This is not a tort action, nor is it a contract action, nor is it based on any other particularized wrong directed toward the plaintiff by the Commonwealth or one of its officers. It is, instead, a claim that a state

agency is violating its legislative mandate and that the plaintiff is aggrieved by the violation.

Few things could be more alien to the principle of judicial review, deeply rooted in our concept of the rule of law, than the Department's assertion that the doctrine of sovereign immunity constitutes an absolute bar to any judicial proceeding challenging the acts of a state agency even if those acts amount to ignoring or refusing to carry out legislative directives. By this reasoning, the Board could simply refuse to promulgate *any* regulations concerning grants of assistance, or it could blithely ignore statutory criteria for eligibility for aid, and no aggrieved citizen would have any recourse to any forum (outside the Board itself). In essence, then, agencies, officials and boards of the executive department could do more or less as they pleased with regard to legislative directives, and the courts would be obligated to turn a deaf ear to the citizens of the Commonwealth affected by such illegal conduct.

There can be no doubt that courts may declare legislation unconstitutional; that they may declare administrative regulations invalid by reason of their conflict with legislative enactments; and that they may compel officials of the executive department to perform non-discretionary, ministerial functions.

In *Brown v. Lukhard*, 229 Va. 316 (1985), the Court invalidated a departmental regulation that violated legislative enactments without hesitating to question its power to do so. *See also Mosher Steel v. Teig*, 229 Va. 95 (1985).

Accordingly, the court rejects the Department's contention that the doctrine of sovereign immunity shields it completely from judicial proceedings challenging the legality of its rules and regulations.

### V. *Statutory Denial of Jurisdiction*

Similarly, the court rejects the Department's claim that the legislature has deprived it of jurisdiction to review any and all decisions involving ADC matters under § 63.1-119.

The statute provides as follows: "The decision of the State Board shall be final and binding and . . . shall not be subject to further review or appeal."

Obviously, proper interpretation of the statute requires a threshold determination of the meaning of the word "decision." The Department argues, in effect, that the statute applies to any decision, determination, or judgment made by the Board. That position is untenable.

First, the argument is a rehash of the sovereign immunity argument: i.e., that the Board can make decisions, including promulgation of regulations, that ignore or violate legislative mandates under which it is supposed to function, and the Board itself is the final arbiter of the validity of such conduct. The General Assembly, in enacting § 63.1-119, did not intend such an absurd result.

Second, reading § 63.1-119 in conjunction with the statutes immediately preceding it, it is clear that the Board is given final decision-making authority over "any decision of a local board in granting, denying, changing or discontinuing assistance." *See* § 63.1-116. These are the kinds of decisions made on a day-to-day basis by state employees with respect to individual eligibility questions. These decisions have nothing to do with challenges to the validity of the regulations themselves.

## VI. *Lack of Jurisdiction*

The Department is correct that Article VI, § 1, of the Constitution of Virginia provides that the General Assembly shall determine the original and appellate jurisdiction of the courts of the Commonwealth. The General Assembly has made those determinations. With respect to circuit courts, the judicial powers and jurisdiction are set forth primarily in § 17-123. Among other jurisdictional authorities, the circuit courts exercise traditional general jurisdiction at law and in equity. Since the General Assembly has not divested the circuit courts of jurisdiction over the subject matter of this suit, and the parties are before the court, the court has *potential* jurisdiction to hear and adjudicate the controversy.

## VII. *Jurisdiction--Separation of Powers*

The real issue in this case involves the concept of separation of powers. (Although the Department did

not argue this specific point in its memorandum, it is a corollary to the Department's position regarding lack of jurisdiction, asserted as a ground for demurrer. *See* Section 8.01-273.)

Article III, § 1, of the Constitution of Virginia provides that the legislative, executive and judicial branches of government "shall be separate and distinct, so that none exercises the powers properly belonging to the others. . . ." *See also* Constitution of Virginia Article 1, § 5.

Under this concept, the courts may not invade the executive department to correct alleged mistakes arising out of abuse of *discretion.* 4A M.J., *Constitutional Law* sect. 56. (Emphasis added.)

Here, Rosado asks the court to declare that the standards of need adopted by the Board are unreasonable. She does not claim that the Board has refused to adopt standards. As discussed above, whenever a regulation which is clearly beyond the authority of an agency to promulgate is sought to be enforced by an executive officer, a court may--and, in fact, would be remiss in its duty if it did not--hold such regulation invalid, if properly challenged. However, it is something entirely different for a court to peruse an executive agency's regulations, adopted pursuant to legislative authority, in order to ascertain the reasonableness of such regulations. That is the essence of this case.

The Board has adopted standards of need and other rules and regulations governing the amount of assistance to be provided under the ADC program. To the untrained eye, the standards appear surprisingly low. Such an observation is irrelevant. This court cannot and will not substitute its judgment for that of a nine-member state board, appointed by the governor, all of whom must be presumed to be responsible, well-informed citizens, as to what is "reasonable" or "adequate" public assistance in the Commonwealth.

The Board has no discretion with respect to its obligation to promulgate regulations governing the amounts of assistance that ADC recipients shall receive under the law. The Board has done that. The Board does have considerable discretion in fixing those amounts, and in determining the standards and formulae to be used in cal-

culating those amounts. The court cannot invade that discretionary province of a duly-constituted executive board. To do so would be violative of the separation of powers doctrine embedded in our constitutional framework, and would surely run afoul of the express language of Article III, § 1, of the Constitution of Virginia.

## VIII. *Conclusion*

For the reason explained in VII above, this court is without jurisdiction to entertain Rosado's challenge to the reasonableness of the standards adopted by the Board. Accordingly, the Department's demurrer will be sustained and the bill dismissed.