Present:  Carrico, C.J., Compton, Hassell, Keenan, Koontz, and
Kinser, JJ., and Whiting, Senior Justice

EDWIN W. LYNCH, JR.,

OPINION BY
v.   Record No. 970278      SENIOR JUSTICE HENRY H. WHITING
January 9, 1998
COMMONWEALTH TRANSPORTATION
COMMISSIONER, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
F. Bruce Bach, Judge


The issue in this sequel to a condemnation proceeding
involves a landowner's liability for refund of that amount of the
sum previously deposited with the court by the condemning
authority and withdrawn by the landowner that exceeded the amount
of the subsequent award.

The Commonwealth Transportation Commissioner (the
Commissioner) planned to take 9.270 acres of a larger tract of
approximately 75 acres owned by Edwin W. Lynch, Jr., in Fairfax
County for the improvement of Interstate Route 95.  The 75 acres
was subject to a deed of trust then held by Dominion National
Bank of Virginia, later by First Union Bank of Virginia, Dominion
Bank's successor in title.  Both banks are referred to herein as
the lienholder.  The deed of trust secured the payment of Lynch's
$3,500,000 obligation to the bank and in pertinent part provided
that:

> Borrower or Grantor shall appear in and prosecute
> any such [condemnation] action or proceeding unless
> otherwise directed by Lender in writing. . . .   The
> proceeds of any award, payment or claim for damages
> . . . in connection with any condemnation or other
> taking, whether direct or indirect . . . are hereby
> assigned to and shall be paid to Lender[.]
>
>      . . . Unless Borrower and Lender otherwise agree
> in writing, any application of proceeds to principal
> shall not extend or postpone the due date of the

[monthly installment payments of principal and interest] or change the amount of such installments.

Because the Commissioner desired immediate possession of the 9.270 acres and his evaluation of the land taken was $1,016,755, he deposited that sum with the clerk of the circuit court under the provisions of Code § 33.1-120.[1] The Commissioner also executed and recorded a certificate of take naming Lynch as the owner of the property.

Lynch then took advantage of Code § 33.1-124, which authorized him to petition the court to order the withdrawal of these funds. His petition alleged that he and Dominion Bank were the only parties entitled to receive the funds and that the bank had agreed to release its lien on the property taken "through a Deed of Partial Release." In a withdrawal order requested by Lynch, the court ordered the deposited funds to be paid to Lynch in care of his attorney, who was directed to "use such funds as are necessary . . . to satisfy the Deeds of Trust . . . currently owing on the property." The order also provided that if the award was less than the deposited funds, judgment for the excess amount of the deposit shall be entered for the Commissioner against "any person [who] has been paid any greater sum than that to which he is entitled as determined by the award."

Upon demand by the lienholder, Lynch endorsed the clerk's November 26, 1990, check of $1,016,755, "[p]ay to order of

[1] Code § 33.1-120 provides in pertinent part that "[t]he Commissioner shall pay . . . to the clerk . . . such sum as [the Commissioner] shall estimate to be the fair value of the land taken . . . before entering upon, or taking possession of, such land [prior to filing a condemnation proceeding]."

Dominion Bank for credit to account of Edwin W. Lynch, Jr." The proceeds of the check were applied by the lienholder in partial discharge of the obligation secured by its deed of trust.

In December 1991, the Commissioner filed a condemnation petition naming Lynch as the only defendant. Lynch filed an answer and grounds of defense in which he asserted that the offer to purchase "was grossly inadequate."

Following a trial before a condemnation commission, the commission fixed the value of the land taken at $740,000 with no damages to the residue. Over Lynch's objection, the court confirmed the commission's report and entered judgment against Lynch for $276,755, the difference between the amount of the deposit and the amount of the award. We awarded Lynch an appeal, reversed the judgment, and remanded the case for a new trial because of errors in the exclusion of certain evidence. Lynch v. Commonwealth Transp. Comm'r, 247 Va. 388, 394, 442 S.E.2d 388, 391 (1994).

At the new trial, a different condemnation commission fixed the value of the land taken at $451,000 with no damages to the residue. The court confirmed the commissioners' report but retained jurisdiction to resolve a dispute concerning the identity of the "person, firm or corporation (if any) which must refund the excess [of $565,755 representing the amount by which the deposit exceeded the commissioners' award] and against which judgment should be entered pursuant to [Code] § 33.1-128."

At the same time, the court ordered the lienholder to be joined as a party to the action "for the purpose of determining

[the lienholder's] liability to return excess condemnation proceeds pursuant to [Code] § 33.1-128."  Following argument and submission of memoranda, in a written opinion, Judge Richard J. Jamborsky ruled that since Lynch had withdrawn the amount of the deposit, he, not the lienholder, became liable to the Commissioner for the repayment of the excess under the provisions of Code § 33.1-128.  Later, Judge F. Bruce Bach entered an order in conformity with Judge Jamborsky's opinion.  Lynch appeals.

> Code § 33.1-128 provides in pertinent part:
> In the event of an award in a condemnation proceeding being of a lesser amount than that deposited with the court, the Commissioner shall recover the amount of such excess and, if <u>any person has been paid</u> a greater sum than that to which he is entitled as determined by the award, judgment shall be entered for the Commissioner against such person for the amount of such excess.

(emphasis added).

Well-settled rules of statutory interpretation guide us in determining whether Lynch is liable for payment of the excess deposit.

> If language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it.  <u>School Board of Chesterfield County v. School Board of the City of Richmond</u>, 219 Va. 244, 250, 247 S.E.2d 380, 384 (1978).  When an enactment is clear and unequivocal, general rules of construction of statutes of doubtful meaning do not apply.  <u>Id</u>. at 250-51, 247 S.E.2d at 384.  Therefore, when the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted because we take the words as written to determine their meaning.

<u>Brown v. Lukhard</u>, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).

Lynch contends that there is no ambiguity in the language of the quoted portion of Code § 33.1-128 and that the withdrawal

order "tracks" this language.  We agree.  Therefore, under the principles articulated in <u>Brown</u>, we do not consider Lynch's extended discussion of (1) whether he "received" the proceeds of the check, or (2) the differing statutory language governing eminent domain proceedings which expressly refers to an "owner" and the statute under consideration which refers to "any person [who] has been paid."  We simply apply the statute and order as written and determine whether Lynch "has been paid" the deposit.

The Commissioner and the lienholder maintain that Lynch was paid because he received the deposit.[2]  Lynch responds that he has not been "paid" within the meaning of the statute and order for the following reasons.

First, Lynch asserts he was not "paid" because in the deed of trust he assigned the "deposit" to the lienholder.  We will assume, but not decide, that Lynch is correct in his contention that the earlier-quoted language of the deed of trust encompassed an alleged assignment of any deposit as well as any later award in a condemnation action.  However, Lynch also reasons that this "assignment operates as a complete divestiture of all rights from the assignor and vests those rights in the assignee."  We do not agree.

The deed of trust provided that Lynch "shall appear in and

---

[2] On appeal, the Commissioner contends that the lienholder was also "paid" within the meaning of the statute.  We do not consider the Commissioner's argument that the lienholder thus became jointly and severally liable with Lynch to the Commissioner for the excess deposit.  The record does not indicate that this argument was asserted in the trial court, Rule 5:25, and the Commissioner did not assign cross-error to the action of the court in entering judgment solely against Lynch, Rule 5:18.

prosecute any such [condemnation] action or proceeding unless otherwise directed by Lender in writing."  The lienholder never directed "otherwise," and, in fact, Lynch did "appear in and prosecute" the action.  His "prosecution" included his filing a petition to withdraw the deposit.  Indeed, at Lynch's request the court ordered the deposit "disburse[d]" to him.  Thus, the alleged assignment did not divest Lynch of all rights in the deposit.

Next, Lynch argues that he was not "paid" any money.  He reasons that

>     [a]lthough the Clerk's check was made payable to him, [he] had no power to cash the check and no control or discretion as to how to apply the proceeds.  It must be remembered that pursuant to the Payment Order . . . the check was disbursed in care of Lynch's attorney, who was ordered to "use such funds as are necessary, if any, to satisfy or partially satisfy the Deeds of Trust . . . currently owing on the property."

Lynch concludes that because the withdrawal order required his counsel to use the funds to satisfy the lienholder's deed of trust, he was "a mere conduit whose only role was to endorse the check -- the real payee was the [lienholder]."  We disagree.

If the language of the deed of trust gave Lynch no right to these proceeds, as he apparently contends, then he need not have petitioned for an early withdrawal and thus subjected himself to possible liability for a refund of the excess.  Moreover, if the lienholder exercised its right under the deed of trust to require Lynch to petition for such withdrawal, as he contends, then on his motion, the court could have protected him from liability for payment of any possible excess.

Lynch was the payee of the check and the order only required his attorney to "use such funds as are necessary, if any, to satisfy or partially satisfy" Lynch's deed of trust. The attorney could have negotiated with the lienholder for a proration of the deposit between Lynch and the lienholder, based on the value of the property taken in relation to the residue of the land still covered by the deed of trust. And, if they could not agree, under the provisions of Code § 33.1-124, Lynch could have petitioned the court for a hearing to resolve this issue and to give him appropriate protection against liability for a return of any excess deposit ultimately paid by Lynch to the lienholder.

In pertinent part, Code § 33.1-124 states that "if the record in the proceeding discloses any . . . dispute as to the persons entitled to such distribution [of the deposit] or to any interest or share therein, the court shall direct such proceedings as are provided by [Code] § 25-46.28 for the distribution of awards." Code § 25-46.28 provides in part that "[i]f it appears to the court that there exists a controversy among claimants to the fund . . ., the court shall enter an order setting a time for hearing the case and determining the rights and claims of all persons entitled to the fund or to any interest or share therein."

These statutory provisions, coupled with Rule 3:9A, authorized Lynch to petition the court to join the lienholder as a party and petition the court either to order the check made payable to the lienholder or make specific provisions for the

lienholder's liability for refund of any excess withdrawal.[3] Lynch filed no such petition; in fact, he simply requested that the court enter the withdrawal order which imposed liability for the excess upon anyone to whom the excess was "paid."  And we are of opinion that under the circumstances of this case, Lynch was the person who was "paid" within the meaning of the statute and order.

For these reasons, we conclude that the trial court correctly imposed liability upon Lynch for payment of such excess.  Accordingly, we will affirm the trial court's judgment.

<u>Affirmed</u>.

---

[3] As pertinent, Rule 3:9A provides:
    A person who is subject to service of process may be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.