COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Beales, McCullough and O'Brien
Argued at Fredericksburg, Virginia


GARRETT R. WHITING

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0141-15-4                   JUDGE RANDOLPH A. BEALES
                                                    AUGUST 11, 2015

CITY OF CHARLOTTESVILLE FIRE AND RESCUE


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Michael A. Kernbach (Law Office of Michael A. Kernbach, P.C., on
        brief), for appellant.

        Ralph L. Whitt, Jr. (Megan A. Kerwin; Whitt & Del Bueno, PC, on
        brief), for appellee.


        Garrett Whiting (claimant) appeals the decision of the Workers' Compensation

Commission (the commission) declining to apply the rebuttable presumption provided for in

Code § 65.2-402(C).  Claimant argues that the commission erred by "inconsistently interpreting

the intent of the General Assembly in enacting the provisions of § 65.2-402(C)" and that the

commission erred by "determining that there was insufficient evidence of exposure to toxic

substances causing or suspecting to cause prostate cancer triggering the provision of

§ 65.2-402(C)."  In addition, claimant argues that the unanimous commission erred when it

determined that "the phrase 'possible risk factor' is not language which meets or approximates

the statutory phrase of 'suspected to be the cause' triggering the benefit of § 65.2-402(C)."  For

the following reasons, we affirm the commission.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

Under settled principles of appellate review, we consider the evidence in the light most favorable to employer, as the prevailing party before the commission. Apple Constr. Corp. v. Sexton, 44 Va. App. 458, 460, 605 S.E.2d 351, 352 (2004). In this case, claimant had been working as a firefighter for the City of Charlottesville Fire Department since July 1, 1983, and, at the time of the hearing before the deputy commissioner on February 18, 2014, was actually the Fire Marshal for the City of Charlottesville. On November 15, 2011, claimant was diagnosed with prostate cancer. He underwent a surgical procedure to have his prostate removed on December 19, 2011. Although his entire prostate was removed, claimant's prostate-specific-antigen (PSA) – an indicator of prostate cancer – increased after the removal operation. In response to this increase in claimant's PSA, the doctors urged claimant to undergo thirty-seven weeks of radiation treatment.

On September 19, 2013, claimant filed a claim for benefits, alleging that he had contracted an occupational disease. He sought medical benefits, along with temporary total disability benefits from December 19, 2011 through January 8, 2012, and two periods of temporary partial disability benefits from January 9, 2012 through January 29, 2012 and September 19, 2013 through November 11, 2013 (the date that his radiation treatments were apparently scheduled to end). The parties stipulated that if the presumption in Code § 65.2-402(C) did not apply, then claimant's claim would necessarily fail.

At the February 18, 2014 hearing before the deputy commissioner, claimant testified as to the various substances to which he had been exposed throughout his career as a firefighter. Specifically, he testified that, early in his career, his self-contained breathing apparatus was not custom fit and that, consequently, fumes would sometimes come in through the mask. Claimant also testified that because the fire trucks were regularly turned on inside the fire station, the

diesel fumes and particles would stick to the walls, which would eventually "be yellow and black because of the soot and stuff." During practice fires, claimant testified, he was exposed to smoke and fumes because he was not required to wear his self-contained breathing apparatus while waiting his turn to go into the practice fire. When claimant would go home after fighting a fire, he would "still have the odor" of the chemicals and fire on his body, and would actually sometimes blow particulate matter out of his nose.

Claimant admitted into evidence the International Agency for Research on Cancer ("IARC") Monograph[1] on which he had identified the various chemicals to which he believed he had been exposed over the course of his firefighting career. Claimant explained how he arrived at the determination that he had likely been exposed to each of the chemicals he identified on the IARC Monograph as follows:

> What I'd use to find out whether I may or may not have been exposed to them, I started Googling them and found out that these were products or compositions of normal household items like woods, plastics, solvents, stains, things that would have been commonly found in a household that I could have been commonly exposed to by – in a structure fire.

In addition to relying on Google to identify the substances to which he believed he had been exposed, claimant also relied on published scientific studies analyzing the different kind of chemicals produced by certain kinds of fires. These studies were not introduced into evidence.

During the hearing, the deputy commissioner also considered completed questionnaires from Dr. Claiborne Whitworth, claimant's urologist, and Dr. Robert Nelson, Jr., claimant's surgeon who removed claimant's prostate. In response to an October 28, 2013 questionnaire, Dr. Whitworth responded "No," to the question of whether claimant's diagnosis of prostate

---

[1] The IARC Monograph provides a list of chemical agents that are separated into different groups based on their known or suspected carcinogenicity to humans.

cancer was "related to or a direct result of" his employment as a firefighter. In that same questionnaire, Dr. Whitworth replied "No" in response to the following question: "If not related to his employment, can you provide within a reasonable degree of certainty what caused [claimant]'s prostate cancer?" In a questionnaire dated November 7, 2013, Dr. Nelson responded "Not known by me" in response to the question whether claimant's prostate cancer was "related to or a direct result of" his employment as a firefighter in the City of Charlottesville. Dr. Nelson could not provide with a reasonable degree of certainty what caused claimant's prostate cancer.

In a later questionnaire, dated February 2, 2014, Dr. Whitworth – who had previously stated that claimant's cancer was not related to or caused by his employment – indicated that he had not had an opportunity to speak with claimant about his employment as a firefighter; that the exact medical cause of claimant's prostate cancer was unknown; that the prostate cancer's development was "thought to be related to certain risk factors which may be contributing initiators or promotors toward the development of prostate cancer;" that there were various possible non-occupational risk factors in the "possible development" of claimant's prostate cancer; that although he knew claimant was a firefighter, he did not know that claimant had been a firefighter since July 1, 1983; that he was not familiar with or aware of claimant's exposures to "carcinogenic substances, toxic substances, diesel exhaust fumes, gasoline exhaust fumes and the like" in his job as a firefighter; that exposures to such substances and fumes constituted "possible risk factors in the possible development of [claimant]'s prostate cancer;" and that he could not "exclude" claimant's exposures as "contributing risk factors in the development of [claimant]'s prostate cancer."

After having had an opportunity to speak with claimant about his exposures to carcinogenic substances, toxic substances, diesel exhaust fumes, gasoline exhaust fumes, "and

the like" during his career as a firefighter, Dr. Whitworth completed another questionnaire, dated February 14, 2014. In that February 14 questionnaire, Dr. Whitworth responded that claimant's occupational exposures were "possible risk factors in the development of [claimant]'s prostate cancer." Dr. Whitworth was unable to exclude the occupational exposures as "contributing risk factors in the development of [claimant]'s prostate cancer."

On March 28, 2014, the deputy commissioner found that claimant's evidence failed to prove that any of the carcinogens to which he had been exposed during his career as a firefighter "causes, or is suspected to cause . . . prostate . . . cancer," see Code § 65.2-402(C), and that a "possible risk factor" is not the equivalent of "cause or is suspected to [be the] cause," as required by the statute. Thus, the deputy commissioner found that the presumption in Code § 65.2-402(C) that claimant's prostate cancer was actually an occupational disease did not apply, and claimant's claim failed since the parties stipulated the claim would fail if the presumption did not apply. Claimant filed a timely request for review by the commission, arguing that the substances to which he was exposed during his career as a firefighter caused his prostate cancer and that Dr. Whitworth's identification of those substances as "possible risk factor[s]" should have been sufficient to invoke the presumption of Code § 65.2-402(C). He also argued that, if the commission decided to affirm the deputy commissioner, then the case should be remanded for the taking of additional evidence.

On January 6, 2015, the commission issued a review opinion, unanimously affirming the deputy commissioner's finding that claimant was not entitled to the benefit of the presumption. The full commission found that a plain reading of Code § 65.2-402(C) required the conclusion that "proving the substance to which a claimant was exposed is carcinogenic is not enough; it must be a carcinogen known or suspected of causing prostate cancer." The commission also found that, although claimant had proven exposure to certain substances during the course of his

- 5 -

employment, none of claimant's evidence linked his exposure to his development of prostate cancer. The commission declined to remand claimant's case for the additional taking of evidence.[2]

## II. ANALYSIS

We review the commission's construction of the statutes *de novo* on appeal. Thomas v. Commonwealth, 59 Va. App. 496, 500, 720 S.E.2d 157, 159 (2012). However, under settled principles, "we must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010). "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (quoting Wagner Enters. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

Code § 65.2-402(C) states, in pertinent part, as follows:

> [P]rostate . . . cancer causing . . . any health condition or impairment resulting in total or partial disability of, any . . . salaried firefighter . . . having completed 12 years of continuous service who has a contact with a toxic substance encountered in the line of duty shall be presumed to be an occupational disease, suffered in the line of duty, that is covered by this title, unless such presumption is overcome by a preponderance of competent evidence to the contrary. For purposes of this section, a "toxic substance" is one which is a known or suspected carcinogen, as defined by the International Agency for Research on Cancer, *and* which causes, or is suspected to cause, . . . prostate . . . cancer.

---

[2] Claimant has, however, attempted to introduce additional evidence by including scientific literature in the back of his opening brief. However, this scientific literature was never introduced below.

- 6 -

(Emphasis added). "When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them. The province of construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation." Winston v. City of Richmond, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954) (citing Almond v. Gilmer, 188 Va. 1, 14, 49 S.E.2d 431, 439 (1948)). "Language is ambiguous if it admits of being understood in more than one way or refers to two or more things simultaneously . . . [or if] the language is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness." Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985) (internal citations omitted). When, on the other hand, the language in a statute is clear and the statute lacks ambiguity, "there is no need for construction by the court; [and] the plain meaning and intent of the enactment will be given it." Id. (citing School Board of Chesterfield County v. School Board of the City of Richmond, 219 Va. 244, 250, 247 S.E.2d 380, 384 (1978)).

The meaning of Code § 65.2-402(C) is clear. In order to receive the benefit of the presumption under Code § 65.2-402(C), claimant needed to have shown the following: (1) that he was diagnosed with prostate cancer; (2) that the prostate cancer caused a health condition or impairment that resulted in total or partial disability; (3) that he was a firefighter; (4) that he had completed 12 years of continuous service; and (5) that he had contact with a "toxic substance" as that term is defined in the statute. At issue on appeal is whether claimant established that he had contact with a "toxic substance" as that term is defined under Code § 65.2-402(C). The plain language of Code § 65.2-402(C) indicates that the definition of a "toxic substance" actually contains *two* elements. To qualify as a "toxic substance" under Code § 65.2-402(C), a substance must (1) be a "known or suspected carcinogen," *and* (2) either "cause" or be "suspected to cause," in this case, prostate cancer.

- 7 -

A claimant seeking to obtain the benefit of the presumption in subsection C of Code § 65.2-402 faces a higher evidentiary burden than does a claimant who seeks to obtain the benefit of the presumption in either subsection A or B of Code § 65.2-402. Code § 65.2-402(A) provides, in relevant part, as follows:

> Respiratory diseases that cause (i) the death of . . . firefighters . . . or (ii) any health condition or impairment of such firefighters . . . resulting in total or partial disability shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

Thus, a claimant seeking to obtain the presumption in Code § 65.2-402(A) need only show that he or she is a firefighter who (1) has acquired a respiratory disease that (2) has caused death or disability. In other words, it is presumed that any firefighter's respiratory disease that causes death or disability is an occupational disease. Similarly, Code § 65.2-402(B) provides, in relevant part, as follows:

> Hypertension or heart disease causing the death of, or any health condition or impairment resulting in total or partial disability of (i) . . . firefighters . . . shall be presumed to be occupational diseases, suffered in the line of duty, that are covered by this title unless such presumption is overcome by a preponderance of competent evidence to the contrary.

Thus, a claimant seeking to obtain the benefit of the presumption in Code § 65.2-402(B) need only show that he or she is a firefighter with either hypertension or heart disease that causes death or disability. It is not enough, for purposes of Code § 65.2-402(C), however, for a claimant to show that he or she was exposed to a carcinogen and then developed a particular cancer. Instead, the claimant must show that he or she was exposed to carcinogen(s) *and that such carcinogens caused or are suspected of causing the particular type of cancer from which the claimant suffers*. The difference between a claimant's evidentiary burden in subsections A and B on the one hand, and subsection C on the other hand, is significant. "[T]he General

- 8 -

Assembly knew how to create a presumption and allocate the burden of proof." Gilliam v. McGrady, 279 Va. 703, 709, 691 S.E.2d 797, 800 (2010). In short, the General Assembly certainly could have written Code § 65.2-402(C) in the same way it wrote Code § 65.2-402(A) or Code § 65.2-402(B) if it had chosen to do so.

In this case, although claimant did establish through his testimony and through his annotations on the IARC Monograph that he was exposed to at least one "known or suspected carcinogen" over the course of his firefighting career, claimant failed to provide evidence to support a finding that his exposure either "cause[d]" or was "suspected to cause" prostate cancer. The commission's finding of fact on this point, which is binding on this Court on appeal, is supported by credible evidence. First, although Dr. Whitworth opined that claimant's exposure to certain substances at work may have been "possible risk factors" in the development of claimant's prostate cancer, a "possible risk factor" is not synonymous to the "cause" or "suspected to cause" language in Code § 65.2-402(C). Cf. Beahm v. City of Norfolk, 2011 VA Wrk. Comp. LEXIS 260[3] (finding that the claimant – who, as a firefighter, had been exposed to benzene, a substance listed in the IARC, and had developed breast cancer – was entitled to the presumption in Code § 65.2-402(C) where the claimant's treating physician opined, in part, that, benzene was "a toxic substance which is suspected of playing a role in causing breast cancer in an individual, such as Ms. Beahm, who is exposed to it").

Similarly, Dr. Whitworth's indication that he could not exclude claimant's exposures to carcinogens as "contributing risk factors" in the development of his prostate cancer falls short of constituting evidence that claimant's exposures were "suspected to cause" or were "the cause" of

---

[3] Although the commission's "decisions are not binding authority on this Court," UPS v. Prince, 63 Va. App. 702, 709 n.2, 762 S.E.2d 800, 803 n.2 (2014), such decisions can serve as persuasive authority.

his prostate cancer. "Suspect" is defined as "to be true or probable." The American Heritage Dictionary 1225 (2d ed. 1991). Thus, a carcinogen is a suspected cause of a particular cancer if it is probably – or more likely than not – the cause of that cancer. It cannot be said, however, that a carcinogen that is a "contributing risk factor" in the development of a particular cancer is more likely than not the cause of that cancer. Thus, none of the responses from either of the doctors who completed the questionnaires establishes that claimant was exposed to a "known or suspected carcinogen" that "causes" or "is suspected to cause" prostate cancer.

Second, we are not persuaded by claimant's argument on appeal that, because he was exposed to Cadmium and Malathion, he was exposed to substances "associated with prostate cancer," and therefore he has adduced sufficient evidence of exposure to a "toxic substance," as that term is defined in Code § 65.2-402(C). Claimant did indicate in the IARC Monograph that he was exposed to Cadmium and Malathion. In so doing, claimant certainly proved the first prong of the Code § 65.2-402(C) definition of "toxic substance" – i.e., "a known or suspected carcinogen, as defined by the International Agency for Research on Cancer," Code § 65.2-402(C) – but he did not (and has not) satisfactorily proved the second prong of the "toxic substance" definition – i.e., that the known or suspected carcinogen "causes" or "is suspected to cause" prostate cancer. However, claimant has attached various scientific studies to his opening brief, which generally indicate that Cadmium and Malathion are associated with prostate cancer. Claimant did not introduce this scientific literature into evidence at the hearing before the deputy commissioner (or later before the full commission), and therefore, that literature cannot be considered part of the record on appeal. See, e.g., Ward v. Charlton, 177 Va. 101, 107, 12 S.E.2d 791, 792 (1941) (explaining that, on appeal, the appellate court is limited to the record of the proceedings which have taken place below).

III. CONCLUSION

The commission did not err when it interpreted Code § 65.2-402(C) to require a claimant to show, *inter alia*, that he or she had been exposed to a known or suspected carcinogen *and* that this known or suspected carcinogen caused or was suspected to cause a particular type of cancer listed in Code § 65.2-402(C) – in claimant's case, prostate cancer. Claimant stipulated that he would not have a viable claim absent the presumption. Credible evidence supported the commission's unanimous finding that claimant had not been exposed to a "toxic substance," as that term is defined under Code § 65.2-402(C), that "causes" or is "suspected to cause" prostate cancer. Consequently, we affirm the commission's order.

<u>Affirmed.</u>