# CIRCUIT COURT OF THE CITY OF RICHMOND

Central Virginia
Ambulance Service, Inc.

v.

City of Richmond

June 28, 1991

Case No. LS-2395-2

By JUDGE RANDALL G. JOHNSON

This is an action by Central Virginia Ambulance Service, Inc. ("CVAS") against the City of Richmond in which CVAS seeks to recover what it contends are overpayments of its business license tax, plus penalty and interest, for tax years 1986 through 1989, inclusive. Such overpayments, according to CVAS, resulted from the City's improper assessment of CVAS' business license tax for those years, and from the City's improper imposition of penalty and interest on the assessments made.

The parties have entered into stipulations of fact, and each asks that judgment be entered in its favor based on the record as it now stands. While the court believes that there are still material facts which have not been fully resolved by the parties, thereby making summary judgment inappropriate, the following findings and legal conclusions, based on the record and arguments presented, should be helpful to the parties in preparing for an evidentiary hearing, or in entering into further stipulations which might make summary judgment appropriate.

## 1. *Facts*

CVAS is a Virginia corporation which, at least since 1984, has been engaged in the business of providing ambulance service. Prior to June 30, 1986, CVAS' corporate headquarters, central dispatch center, main ambulance station, and all branch stations were located in Richmond, except for branch stations located in York County, the City of Portsmouth, and Montross, Westmoreland County. The parties agree that the latter branch stations are not relevant here.

On June 30, 1986, CVAS moved its corporate headquarters to Henrico County. Its dispatch center and main ambulance station were moved to Henrico on November 30, 1987. Both before and after these moves, CVAS was under contract with Richmond to provide 911 emergency services in the city. This contract required CVAS to maintain ambulance stations within the city, and such stations, as well as CVAS' vehicle maintenance facility, were maintained in Richmond during all years in question.

For the years 1984 and 1985, CVAS had a business license in Richmond and paid business license taxes to the City. Upon moving its headquarters to Henrico in 1986, however, CVAS obtained its business license from Henrico and no longer applied for a business license, filed business license tax returns, or paid business license taxes to Richmond. It did pay such taxes to Henrico. In fact, no taxes were assessed by the City after 1985 until the latter part of 1989.

On or about September 7, 1989, the City issued to CVAS an assessment for Business License Taxes Due for 1986, 1987, 1988, and 1989. On or about December 22, 1989, the City issued to CVAS a revised assessment for Business License Taxes Due for 1987, 1988, and 1989. Both the September and December assessments indicated that they represented "Omitted Assessments." CVAS has now paid all of the amounts claimed by the City as taxes, penalty, and interest for the years in question, and it now seeks a refund of the sums it claims the City improperly collected after its headquarters, dispatch center, and main ambulance station were moved to Henrico. At issue are (1) whether Richmond has authority to impose a business license tax

on CVAS based on any revenues other than those arising from CVAS' contract with the City; and (2) whether the City's imposition and computation of penalties and interest are correct.

## 2. *Taxes*

CVAS argues that Richmond cannot tax any of CVAS' revenues other than those arising from CVAS' contract with the City because CVAS' corporate headquarters, dispatch center, and main ambulance station are in Henrico. This argument, however, is squarely and conclusively refuted by the very statute which authorizes localities to impose business license taxes. Va. Code § 58.1-3708(A) provides:

> Except as otherwise provided by law and except as to public service corporations, the situs for the local license taxation of any licensable business, trade, occupation or calling shall be the county, city or town (hereinafter called "locality") in which the person so engaged *has a definite place of business or maintains his office.* If any such person has a definite place of business or maintains an office in any other locality, *then such other locality may impose a license tax on him,* provided such other locality is otherwise authorized to impose a local license tax with respect thereto. (Emphasis added.)

It is crystal clear that CVAS has "a definite place of business" in Richmond. Each of its ambulance stations, as well as its vehicle maintenance facility, is unquestionably a "definite place of business" within the meaning of the statute. Indeed, CVAS has even stipulated that in November, 1987, it "established a taxable situs in the County of Henrico *in addition to* the City of Richmond." Stipulation of Fact, No. 4 (emphasis added).

Even in the absence of CVAS' stipulation, it is clear that Richmond is a proper situs for taxation. Section 58.1-3708 makes it clear that where an entity maintains an office or place of business in Virginia, it may *only* be taxes by the locality(ies) where such office(s) or place(s) of business is (are) located. While § 58.1-3708(C)

allows an entity with *no* office or place of business in Virginia to be taxes wherever in Virginia it does business, the same is not true for businesses which do have at least one office or place of business in this state. Thus, by conceding that Richmond may properly impose a business license tax on CVAS on revenues generated by CVAS' contract with Richmond, CVAS has necessarily conceded that Richmond is a proper situs for imposing a business license tax on CVAS under § 58.1-3708(A).

Moreover, neither § 58.1-3708(A) nor any other provision of the Code makes any distinction between, or gives any preference to, any particular place of business or type of office. Section 58.1-3708(A) states simply that an entity may be taxes by *any* locality where the entity has *a* definite place of business *or* its office. Thus, a locality in which a company has a one-person branch office has as much right to impose a business license tax on that company as does the locality in which the company maintains its 1,000-person corporate headquarters. So, too, does Richmond, where CVAS maintains ambulance stations and a vehicle maintenance facility, have as much right to tax CVAS as does the County of Henrico, where CVAS' corporate headquarters, dispatch center, and main ambulance station are located. CVAS' arguments to the contrary are without merit.

First, CVAS argues that the legislative history and predecessor statutes to § 58.1-3708 mandate a construction of that statute different from the interpretation placed upon it by the court. As the Supreme Court has often pointed out, however, "[i]f statutory language 'is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it . . . . When an enactment is clear and unequivocal, general rules of construction of statutes of doubtful meaning do not apply'." *Moore v. Gillis,* 239 Va. 239, 241, 389 S.E.2d 453 (1990) (quoting *Brown v. Lukhard,* 229 Va. 316, 321, 330 S.E.2d 84 (1985)). Section 58.1-3708(A) is clear and unequivocal.

Second, CVAS cites a 1981 Attorney General opinion involving a corporation with a branch office in Chesterfield County but whose home office was located outside Virginia. A salesman working out of the branch office solicited orders for the company and sent all orders received to

the home office. The merchandise was then shipped from outside Virginia directly to the customer, and the out-of-state home office prepared all billings. The customers' payments were also sent directly to the home office. The Attorney General opined that the foreign corporation was not exempt from local license taxation. *See* Opinions and Report of the Attorney General (1980-1981) at 349. CVAS relies upon this opinion to argue that since Chesterfield County could tax a foreign corporation because its salesman solicited business there, CVAS can *only* be taxes in Henrico because its "sales," other than its contract with Richmond, are initiated there; that is, all of its "runs," whether in Richmond or Henrico, are initiated by calls to its office in Henrico. This argument misses the mark.

The factual situation in the Attorney General's opinion bears no resemblance to the facts presented here. There, the issue was simply whether Chesterfield County had the right to tax, not whether each of two Virginia localities had such right. There is absolutely nothing in that opinion which is even remotely contrary to anything contained in the court's opinion here.

Third, CVAS argues that since it kept some ambulance stations in Richmond *only* because it was required to do so under its contract with the City and that its maintenance facility was kept here *only* because it was centrally located and could repair the vehicles that were dedicated to the City contract, it is clear that Henrico was the "primary situs" of CVAS' operations after November, 1987. As previously pointed out, however, § 58.1-3708(A) does not speak in terms of a "primary" situs. *Any* locality in which the entity has an office or place of business is a proper situs, and there is no ranking of such sites in the statute. In addition, the statute contains no mention of *why* a place of business or office is maintained in a locality, only a requirement that it *be* maintained. This argument, then, also fails.

Finally, CVAS argues that the statute should be interpreted in such a way as to avoid CVAS' being "double-taxed." Such avoidance, however, is accomplished by the statute itself. Section 58.1-3708(B) provides:

Where a local license tax imposed by any such

other locality is measured by volume,[1] the volume on which the tax may be computed shall be the volume attributable to the business, trade, occupation, or calling in such other locality. All volume attributable to the business, trade, occupation, or calling in any such other locality which levies a local license tax thereon shall be deductible from the base in computing any local license tax measured by volume imposed on him by the locality in which the first-mentioned, definite place or office is located. (Footnote added.)

As can be seen and as has already been partially discussed, neither § 58.1-3708(A) nor 58.1-3708(B) defines which of two or more localities is where "the first-mentioned definite place or office is located," and which locality or localities are "such other localit[ies]." Such distinction, however, makes no difference. Whether a locality calculates total gross receipts and deducts therefrom those receipts attributable to all locations other than its own, or simply calculates gross receipts attributable only to its location, the result, assuming *proper* calculation, will be the same. If the calculation is improper, the taxpayer can do what CVAS has done here: seek relief in court.

This, then, brings us to the real matter is controversy, and the reason that summary judgment cannot be entered; that is: what portion of CVAS' total gross receipts are "attributable" to CVAS' business in Richmond?

Again, CVAS argues that only the revenues generated by its contract with the City are attributable to its business in Richmond. All other revenues, so it claims, are attributable to its business in Henrico since its headquarters are in Henrico and all of its "runs" are dispatched from there. I disagree.

The word "attributable" is derived from the verb "attribute," which Webster's defines as "to consider as belonging to, produced by, or resulting from." *Webster's*

---

[1] Section 58.1-3708(D) defines "volume" as gross receipts, the measure used by the City here.

*New Twentieth Century Dictionary* (2d Ed. 1968). The court concludes that in the context of CVAS' business, the revenues generated from each ambulance "run" is attributable to the location of the "run."

The court's conclusion in this regard is based on a very simple fact: when a person or hospital needs ambulance service, it makes absolutely no difference where the ambulance company's headquarters, dispatcher, or main ambulance station are. All that matters is whether the company can provide an ambulance where he or she is located, take him or her where he or she needs to go, and do so at an affordable price. Thus, if a person needs to be picked up in Richmond and delivered to a Richmond hospital, he or she calls CVAS not because CVAS is headquartered in, or dispatches from, Henrico, but because CVAS provides ambulance service in Richmond. If CVAS did not provide ambulance service in Richmond, such person would not call CVAS, no matter where CVAS maintains its headquarters, dispatcher, and main station. As such, CVAS' ambulance service revenues generated by Richmond "runs" are most definitely "produced by [and] result[] from" CVAS' doing business in Richmond. They do not result from CVAS' doing business in Henrico County.

In light of the above holding, the court is unable to grant summary judgment to either party now. The record is simply insufficient for the court to make any finding as to which of CVAS' revenues are attributable to "Richmond runs" and which are attributable to "Henrico runs." The parties must either enter into additional stipulations regarding such runs, or an evidentiary hearing must be held. Summary judgment cannot be entered.

CVAS states in its brief that it would be a "nightmare" to determine where patients were picked up and delivered during the years in question. CVAS' Brief at 16. Even so, the court can only base its decision on evidence, or on stipulations of the parties. The parties should keep in mind, however, the clear presumption that an assessment is correct and that CVAS has the burden of proving it to be erroneous. *See, e.g., American Viscose Corp. v. City of Roanoke*, 205 Va. 192, 195, 135 S.E.2d 795 (1964) ("In Virginia it is settled law that there is a clear presumption in favor of the assessment as made by the

assessors, and the burden is upon those who seek relief to show that the [assessment] is excessive . . . .")

### 3. *Penalty and Interest*

Turning now to the second issue in the case, CVAS contends that (1) no penalty or interest should be imposed by the City at all; and (2) even if penalties and interest can be imposed, they cannot accrue from a date earlier than the date an assessment was made, the assessments in this case having been made in September and December, 1989.

With regard to its first contention, CVAS cites Va. Code § 58.1-3916, the pertinent part of which provides:

Penalty and interest for failure to file a return or to pay a tax shall not be imposed if such failure was not the fault of the taxpayer. The treasurer shall make determinations of fault relating exclusively to failure to pay a tax, and the commissioner of the revenue shall make determinations of fault relating exclusively to failure to file a return. In jurisdictions not having a treasurer or commissioner of the revenue, the governing body may delegate to the appropriate local tax officials the responsibility to make the determination of fault . . . .

This section shall be the sole authority for local ordinances setting due dates of local taxes and penalty and interest thereon and shall supersede the provisions of any charter or special act.

CVAS argues that it should not be charged penalty and interest because it relied in good faith upon its belief that beginning in 1986, business license taxes were due only to Henrico. Thus, according to CVAS, it was without fault in failing to file a return and pay a tax for each of the years in question. The court cannot reach such a finding on the present record.

The record before the court discloses the following facts: Until June 30, 1986, all of CVAS' offices and other facilities were located in the City of Richmond. Nothing

was located in Henrico. Even after its corporate headquarters, dispatch center, and main ambulance station were moved to Henrico, CVAS has conceded that a taxable situs still existed in Richmond. From 1986 through 1989, CVAS had revenues of $3,175,064 from what CVAS describes as "Hospital Account[s] for Facilities/Contracts in the City of Richmond."[2] This does not include revenues generated by CVAS' contract with the City itself. These facts fall woefully short of showing lack of fault on the part of CVAS.

Section 28-340 of the Code of the City of Richmond provides that "every license tax assessable under this article shall be assessable on the first day of the license tax year *and shall be due and payable on the first day of the license tax year.*" (Emphasis added.)[3] Since Richmond's business license tax year coincides with the calendar year, CVAS was legally obligated to file a return and pay its 1986 tax on January 1, 1986, six months *before* it moved any of its operations to Henrico.[4] Similarly, unless CVAS takes the position that moving just its headquarters to Henrico in 1986 relieved it of paying taxes to Richmond, it was also obligated to file a return and pay its 1987 tax on January 1, 1987, eleven months *prior* to moving its dispatch center and main ambulance station to Henrico. CVAS filed no return and paid no tax for either year. Such omissions are inconsistent with CVAS' claim of good faith.

Even more damaging than the above omissions, however, is the fact that while CVAS concedes that it is liable for taxes on revenues derived from its contract with the City, which contract existed in each of the years under consideration, it failed to file a return to pay taxes

[2] See Exhibit C4 to the Stipulations of Fact.

[3] Va. Code Section 58.1-3916 specifically authorizes localities to provide by ordinance the time for filing applications and returns, as well as the time for payment of the tax.

[4] Section 28-320.5 of the Richmond Code provides for a refund of a portion of the tax paid when a business ceases operation during the year. See also Va. Code Section 58.1-3710, which also requires such refunds.

*even on those revenues.* The court simply cannot accept CVAS' arguments, based on the record as it now exists, that its failures to file returns and pay taxes were without fault on its part. If CVAS expects to prevail on that argument, more of a record is required. Of course, the burden is again on CVAS to prove that it was not at fault. *See, supra.*

Finally, CVAS argues that even if penalties and interest can be imposed by the City for its failure to file returns and pay its tax, such penalties and interest can accrue no earlier than 30 days after the date of the assessment if such failure was not CVAS' fault, and no earlier than the actual date of the assessment, even if the fault was CVAS'. The City has imposed penalties and interest commencing February 1 of each year in question. In support of its argument, CVAS cites Va. Code § 58.1-3903, which states:

> *Omitted local taxes or levies.* -- If the commissioner of the revenue of any county or city or the tax-assessing officer of any town ascertains that any local tax has not been assessed for any tax year of the three years last past or that the same has been assessed at less than the law required for any one or more of such years, or that the taxes for any cause have not been realized, the commissioner of the revenue or other assessing officer shall list and assess the same with taxes at the rate or rates prescribed for that year. Penalty and interest at the rate provided under §§ 58.1-3916 and 58.1-3917 shall accrue thereon from the date of such assessment until payment; provided, if such assessment was necessitated through no fault of the taxpayer, such penalty and interest shall accrue after thirty days from such date of assessment until payment.

Since both the September, 1989, and the December, 1989, assessments at issue here state on their face that they represent "omitted" assessments, CVAS argues that the last sentence of the above statute limits the time from which penalties and interest may accrue. I disagree.

While at first glance § 58.1-3903 might appear to support CVAS' argument, that section must be read in conjunction with § 58.1-3916, a portion of which has already been set out above. What was not set out above is the following:

> [T]he governing body of any county, city or town may provide by ordinance the time for filing local license applications and . . . may provide by ordinance penalties for failure to file such applications . . . and for nonpayment in time and may provide for payment of interest on delinquent taxes. Any county, city or town which had established by ordinance enacted before January 1, 1984, other dates for payment of taxes or installments may continue to require such payment on such dates . . . . Interest may commence not earlier than the first day following the day such taxes are due by ordinance to be filed . . . . Penalty for failure to file an application . . . may be assessed on the day after such . . . application is due; penalty for failure to pay any tax may be assessed on the day after the first installment is due. Any such penalty when so assessed shall become a part of the tax.

Thus, §§ 58.1-3903 and 58.1-3916 give localities specific authorization to do two separate and distinct things. Section 58-3903 authorizes localities to impose a penalty and interest on assessments which, for any reason, were omitted. Such penalty and interest may not accrue earlier than the date of the assessment if the taxpayer is at fault, or thirty days thereafter if the taxpayer is not at fault. In either event, it allows the locality to collect penalties and interest even though the locality failed to make an assessment at the time such assessment should have been made.

Section 58.1-3916, on the other hand, authorizes localities to impose penalties and interest when a taxpayer fails to file an application for a license or to pay a

tax when due.[5] Such penalties and interest have nothing to do with the locality's failure to make an assessment; they are imposed because the taxpayer failed to file a license application or failed to pay a tax when due. Since CVAS did not file a license application or pay a license tax on January 1 of any of the years in question, it is Section 58.1-3916 which authorizes penalties and interest here. The fact that later assessments were made and that those assessments indicate that they represent "omitted" assessments is irrelevant. CVAS did not file its application or pay its taxes when due, and it is for those reasons that penalties and interest were imposed.[6] As already stated, however, the court will allow CVAS to attempt to prove that its failure to file applications and pay taxes was not its fault, since § 58.1-3916 provides that "[p]enalty and interest for failure to file a return or to pay a tax shall not be imposed if such failure was not the fault of the taxpayer." *See* pp. 8-10, *supra*. Accordingly, summary judgment cannot be entered for the City.

## Conclusion

For the reasons set out above, the court will deny each of the parties' motions for summary judgment.

---

[5] Section 58.1-3916 also deals with a taxpayer's failure to file certain types of tax returns not relevant here.

[6] The City's provision for penalty and interest is found in Section 28-340 of the City Code.