## CIRCUIT COURT OF THE CITY OF RICHMOND

Lois Jackson

 v.

Va. Department of Social Services et al.

   Case No. C-9512-1


Nell E. Turner et al.

 v.

William L. Lukhard

   Case No. N-2608-3


Vivian Latney

 v.

Larry Jackson et al.

   Case No. N-2459-1


   December 7, 1987

By JUDGE MELVIN R. HUGHES, JR.

Because of the similarity of the issues involved in these three cases, the Court has decided to consolidate them for purposes of this opinion. *Jackson v. Virginia Department of Social Services et al.*, Case No. C-9512 (*Jackson*), and *Turner v. Lukhard*, Case No. N-2608-3 (*Turner*), are pending on demurrer. *Latney v. Jackson*, Case No. N-2459-1 (*Latney*), is pending on defendant's Motion for Summary Judgment. For reasons stated herein, defendants' demurrer in *Latney* is reconsidered.

All the cases involve one or more welfare (Aid to Dependent Children) recipients aggrieved by a decision of the Department of Social Services to reduce or terminate their benefits. The plaintiffs in these cases have then brought suits in equity challenging the agency regulation or policy underlying the reduction in benefits and seeking (1) a declaration that the agency regulation is or was unlawful and (2) an injunction requiring the agency to provide the plaintiffs with retroactive benefits. In *Jackson* and *Turner*, the named plaintiffs seek to represent all ADC applicants and recipients similarly affected by the regulation at issue and seek class-wide relief.

Considering only the merits of the plaintiffs' claims, the claims are substantial. In *Turner*, the plaintiffs seek the same relief (retroactive benefits) that the court awarded to similarly situated plaintiffs in the case of *Brown v. Lukhard*, 229 Va. 316 (1985). The *Brown* court held that benefits for students aged 18-21 were unlawfully reduced for a three-month period in 1981. In *Latney*, the plaintiff seeks a ruling that the present ADC standards of need, used to determine eligibility for assistance, do not provide a reasonable subsistence. The Virginia Code requires that assistance payments provide a reasonable subsistence. Federal regulations require that States set standards of need and that assistance payments be less than or equal to the standards of need. 45 C.F.R. § 233.20(a)(2)(i), (ii). Agency officials have made formal statements before other government officials that the present standards are too low. The *Jackson* plaintiffs claim that the agency erred in interpreting a federal regulation as requiring that receipts from sales by ADC recipients of their "resources" become "income" rather

than remaining a resource. Official comments in the *Federal Register* explaining the federal regulation appear to indicate that the plaintiffs are correct on this matter, contrary to the agency's assertion that it acted in accordance with federal policy.

## Jurisdiction

However, before addressing the merits of these claims, the Court must consider whether it has the jurisdiction to do so. The Virginia Constitution, art. VI, § 1, provides that the "General Assembly shall have the power to determine the original and appellate jurisdiction of the courts of the Commonwealth." The General Assembly has established an administrative appeal process for "[a]ny applicant or recipient aggrieved by any decision of a local board in granting, denying, changing or discontinuing assistance." Va. Code § 63.1-116. The plaintiffs in all of the cases clearly are subject to this appeal process. The aggrieved person must appeal to the State Board of Social Services within thirty days after receiving notice of the local board's decision. § 63.1-116. The State Board must provide an opportunity for a hearing and give fair and impartial consideration of the testimony of witnesses or other evidence produced at the hearing. § 63.1-117. The State Board may delegate its authority to make a determination on an appeal to a duly organized hearing officer, whose decision may be reviewed by the State Board upon the request of the applicant/recipient or the local board. Section 63.1-116. The State Board's decision shall be final and not subject to further review except by the State Board itself. § 63.1-119.

The legislature has expressed its intent to make this administrative remedy exclusive in § 63.1-119. For this reason, the Court considers itself without jurisdiction to entertain the *Latney* case. Upon suspension of her ADC benefits, Mrs. Latney could have appealed the local board's decision to the State Board within the prescribed time period for a hearing. She failed to appeal, according to counsel at oral argument. She is therefore estopped from contesting her case decision and the underlying regulation in court.

In the *Jackson* case, Ms. Jackson did seek and obtain a hearing at the State Board level on her claim. She was dissatisfied with the Board's decision because the Board did not admit to having made a mistake in construing federal policy and therefore did not provide her with retroactive relief, although it did provide prospective relief. Because of the finality of the Board's decision on appeal, the Court is without jurisdiction to hear Ms. Jackson's claim. Although Ms. jackson filed a second administrative appeal specifically protesting the lack of retroactive relief and the Board dismissed the appeal without a hearing, the issue on appeal can fairly be said to have been decided in the prior Board decision.

Ms. Jackson also protests an alleged failure of the agency to (1) meaningfully inform the class of plaintiffs of the policy change in 1981 reducing the plaintiffs' assistance, (2) notify the plaintiffs of their right to a hearing to contest the agency's decision not to provide retroactive benefits, and (3) provide for reinstatement of benefits to the plaintiffs rather than for reapplication for benefits after the agency's decision on Ms. Jackson's appeal, in violation of federal and state regulations. Ms. Jackson, however, does not show now she herself was harmed by these alleged wrongs. She was aware of her administrative appeal rights, asserted them, and is bound by the Board's decision regarding her rights.

The named plaintiff in *Turner*, however, present a materially different case. Affidavits by plaintiffs Turner and Riley indicate that at least some of the named plaintiffs tried to appeal but were denied a hearing by the Board. The denials were based on a regulation disallowing hearings when state or federal law requires automatic grant adjustments for classes of recipients. Since these plaintiffs were never afforded an opportunity for a hearing, the State Board never made a final decision on the merits and the finality provision of § 63.1-119 cannot be held to apply. The claims of Ms. Turner and Ms. Riley have already been satisfied by the agency and the suit is thus moot for them, but not for the other similarly situated named plaintiffs. The apparent futility of their trying to obtain an administrative hearing on this issue prevents the estoppel of these plaintiffs from bringing their claims to court.

*Sovereign Immunity*

The question of the jurisdictional basis for the *Turner* plaintiffs' claims still remains, though. The Commissioner of Social Services, William L. Lukhard (a defendant in each case), has pleaded sovereign immunity in each case. On this plea, the critical question appears to be whether the suit is, in effect, against the state, or against an officer to restrain him from acting outside of his authority. This distinction is critical in the case of *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682 (1949), cited in *Hinchey v. Ogden*, 226 Va. 234 (1978). The type of relief sought is not determinative of the question. A suit to enjoin an individual officer may, in effect, be a compulsion against the sovereign. *Larson* at 688. If the suit is against the state, then the state enjoys sovereign immunity unless expressly waived. *Hinchey* at 241.

The *Larson* court described suits against state officers which would not be construed to be suits against the state as follows:

> where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign empowered him to do or he is dong it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be the object of specific relief. It is important to note that in such cases the relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power. A claim of error in the exercise of that power is not sufficient.

*Id*. at 689-90.

The court went on to explain the distinction of acting outside of authority from error in the exercise of authority:

It is argued that an officer given the power to make decisions is only given the power to make correct decisions. If his decisions are not correct, then his action based on those decisions is beyond his authority and not the action of the sovereign. There is not warrant for such a contention in cases in which the decision made by the officer does not relate to the terms of his statutory authority. Certainly the jurisdiction of a court to decide cases does not disappear if its decision on the merits is wrong. And we have heretofore rejected the argument that official action is invalid is based on an incorrect decision as to law or fact, if the officer making the decision was empowered to do so. *Adams v. Nagle*, 303 U.S. 32, 542, 82 L. Ed. 999, 1006, 58 S. Ct. 687 (1938). We therefore reject the contention here.

*Id.* at 695.

The *Larson* court did provide a limitation of its holding:

Under our constitutional system, certain rights are protected against governmental action and, if such rights are infringed by the actions of officers of the Government, it is proper that the courts have the power to grant relief against those actions. But in the absence of a claim of constitutional limitation, the necessity of permitting the Government to carry out its functions unhampered by direct judicial interference outweighs the possible disadvantage to the citizen in being relegated to the recovery of money damages after the event.

*Id.* at 704.

Given the *Larson* court's reasoning, the Court finds that defendant has not acted outside of his authority. He does appear to have wronged at least some of the plaintiffs in denying them the relief provided to the *Brown* plaintiffs. Federal statutory and regulatory law require state welfare plans to provide for prompt correction

of underpayments to current recipients and those who would be a current recipient if the error causing the underpayment had not occurred. 42 U.S.C. § 602(a)(22); 45 C.F.R. § 233.20(a)(13)(ii). Also, Va. ADC Manual § 503.8 requires the agency to correct outstanding underpayments to former recipients who have reapplied and are found eligible. The federal requirements are conditions by which states must abide in order to receive federal welfare assistance. Va. Code § 63.1-35. However, it appears to the Court that the Commissioner has the inherent authority to determine whether to make or withhold welfare payments, including retroactive payments, given the broad grants of authority in § 63.1-4 and § 63.1-31. Thus, the Commissioner's action at issue is more like a wrongful decision than an *ultra vires* act. The Court disagrees with the plaintiffs' reading of the *Brown v. Lukhard* opinion as holding that the defendants therein committed an *ultra vires* act. The issue of sovereign immunity apparently was never raised in *Brown*.

As mentioned before, *Hinchey* made clear that sovereign immunity cannot be waived by implication--statutory language granting consent to suit must be explicitly and expressly announced. *Hinchey* at 241. The Virginia Code provides a waiver of immunity for pecuniary claims against the Commonwealth upon any legal ground and a procedure for pursuing such claims. *See* § 2.1-223.1 et seq. and § 8.01-192 et seq. Plaintiffs seeking welfare benefits may pursue this statutory remedy for recovery of their claims without the threat of a sovereign immunity defense. *See Randall v. Lukhard*, 709 F.2d 257, 270 (4th Cir. 1983). *Brown v. Lukhard* conclusively establishes the merits of these plaintiffs' pecuniary claims.

### Declaratory Relief

The Court also finds that a declaratory judgment would be inappropriate in *Turner*. The purpose of the declaratory judgment act is to afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitled him to maintain an ordinary action therefor. Va. Code § 8.01-191. Plaintiffs' alleged rights (to certain

benefits accrued in 1981) have already been invaded and they may maintain actions therefor pursuant to § 2.1-223.1 et seq. and § 8.01-192 et seq. In *Fairfield Dev. Corp. v. City of Virginia Beach*, 211 Va. 715 (1971), the court held that where the petitioners, in essence, were seeking a money judgment for a sum certain, and the court had nothing to determine that would guide the parties in their future conduct in relation to each other (aside, of course, from determining whether the money was owed), the declaratory judgment remedy was not available. The *Fairfield* court also noted that the power to make a declaratory judgment is a discretionary one and must be exercised with care and caution, and not when an alternative remedy is available. *Brown v. Lukhard* is distinguishable in that the bill of complaint as originally brought, sought declaratory relief as to future benefits rather than as to corrections of past underpayments. *Id.* at 318. While declaratory relief is proper where a claim of constitutional limitation is asserted and no other adequate remedy is available (*Mosher Steel-Virginia v. Teig*, 229 Va. 95 (1985)), the Court finds that the plaintiffs in this case have an adequate remedy in the pecuniary claim process.

### *Jurisdiction Under Section 1983*

The Court also finds that defendant Lukhard is not a "person" for purposes of 42 U.S.C. § 1983 and is therefore not subject to suit under that statute. Since a judgment against state officers in their official capacity would be in essence a judgment against the State and the State is not a "person" within the meaning of the statute, it follows that an action against state officers in their official capacity does not lie under 42 U.S.C. § 1983. *Landman v. Royster*, 354 F. Supp. 1302 (E.D. Va. 1973). *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), and *Brandon v. Holt*, 105 S. Ct. 873 (1985), are distinguishable in that their holdings are expressly limited to providing that *municipal* governments and officers are "persons" under § 1983.

*Representative Suits*

After considering whether the Court should entertain a class or "representative" suit in these cases, the Court has decided against it. Although the court recognizes that there is precedent for entertaining a class action in equity in Virginia, including suits involving monetary relief, the individual factual questions concerning the benefits due each plaintiff are too numerous to handle efficiently in a single collective suit. Also, the pecuniary claim process does not seem to allow for a class action against the Commonwealth. § 2.1-223.1 contemplates that each person having a pecuniary claim make his or her claim individually.

*Statute of Limitations*

The Court also wishes to discuss the statute of limitations issue. There is a five year limitation period for pecuniary claims against the Commonwealth. Va. Code Section 8.01-255. The rights to the claims of the plaintiffs in this case arose when they were wrongfully denied ADC benefits during July-September, 1981. This case was brought on October 22, 1985, tolling the limitation period. *See* Va. Code § 8.01-229(D)(1). The plaintiffs herein who seek retroactive benefits will be held to this five-year limitation period, as extended by its tolling during the pendency of this suit.

*Summary*

In summary, the Court finds it is without jurisdiction to hear the claims of Ms. Latney and Ms. Jackson, due to § 63.1-119. The Court reserves the question whether any of the class of plaintiffs in *Jackson* may have a pecuniary claim. The Court finds that three of the named plaintiffs in *Turner*, namely Ms. Martin, Ms. Walker, and Ms. Royster, may be eligible for relief under the pecuniary claim statute, and the Court will allow them to amend their pleading to comply with § 8.01-192 et. seq. (adding the Comptroller as a defendant).

It is worthwhile to note that the pecuniary claim statute is not primarily intended to be a device for the review of administrative action. The Administrative Process Act, (APA), on the other hand, is the vehicle for review of administrative decisions generally, and the intent of the APA is to standardize court review of agency regulations and case decisions. Va. Code Section 9-6.14:3. Various Virginia circuit courts and the Fourth Circuit in *Harris v. Lukhard*, 733 F.2d 1075 (4th Cir. 1984), however, have held agency regulations involving public assistance to be exempt from APA review.

After having undergone restructuring in 1985, with amending language, the APA may now be available to accommodate review of public assistance regulations. This question is not important for deciding these cases, and the court reserves any determinations of APA review in this area.

Each counsel in each case is directed to provide a suitable draft for order dismissing the bill of complaint for lack of jurisdiction in *Jackson* and *Latney*. Counsel in *Turner* are directed to provide a draft for order sustaining the defendant's demurrer in part, with leave to file an amended Bill of Complaint with responsive pleadings to be filed within twenty-one days of service.